**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**Miami Division**

IN RE Lead Case No. 26-18018-PDR

J.B. HARRIS, P.A., THE LAW OFFICES OF J.B. HARRIS, P.A., THE LAW OFFICES OF JONATHAN B. HARRIS, P.A., Debtors. Chapter 11 (Jointly Administered)
_____________________________________/

**HARRIS'S URGENT MOTION TO DISMISS SUGGESTION OF BANKRUPTCY FOR BAD FAITH FILING AND ABUSE OF PROCESS AND FOR RELIEF FROM THE AUTOMATIC STAY**

COMES NOW J.B. Harris, *pro se*,[1] pursuant to 11 U.S.C. § 1112(b), 11 U.S.C. § 305(a), Federal Rule of Bankruptcy Procedure 9014, and Local Rule 9013-1 of the United States Bankruptcy Court for the Southern District of Florida, hereby files this Urgent Motion to Dismiss the Suggestion of Bankruptcy for Bad Faith Filing and

[1] Although J.B. Harris ("Harris"), as a licensed attorney, cannot represent the Harris Debtors in this bankruptcy proceeding, *Electro-Wire Prods. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356 (1994), *In re Estes,* 57 B.R. 158 (1986), 11 USCS § 327, Harris appears *pro se* solely to protect his rights as sole shareholder to the Debtors' principal (and only meaningful) asset: a multi-million-dollar share of a confidential global settlement between nearly 100 *Engle* and *Broin* progeny tobacco clients and cigarette defendants, R.J. Reynolds Tobacco Co. and Philip Morris USA, Inc. This interest either aligns with—or is adverse to—the Debtors' rights to the same asset. Further, neither Harris nor any of the Harris Debtors have ever signed a promissory note, security agreement, or guarantee evidencing any debt owed by them (or anyone else) to Virage. In the interest of judicial economy and an expeditious resolution, Harris respectfully requests that the court dismiss this proceeding and grant Harris relief from the automatic stay to permit the long running state court proceedings, referenced below, to continue without further delay.

Abuse of Process, and for Relief from the Automatic Stay, and in support thereof states:

## I. INTRODUCTION

1. J.B. Harris has been a member of the Florida Bar for 40 years. Notwithstanding Stuart R. Kalb's claims ("Kalb"), Harris is the sole shareholder of the above-captioned Harris Debtors—three closely related professional service corporations that have been improperly placed into bankruptcy by a bad-faith Suggestion of Bankruptcy filed on June 18, 2026.[2] Kalb, acting as Manager of DB Mortgage LLC, filed the suggestions of bankruptcy without authorization or notice **(Exhibit "A")**.

2. As proof, Kalb and DB Mortgage LLC failed to provide Harris with any notice of a sheriff's sale prior to the bankruptcy filing, in direct violation of Florida law. Under Florida Statutes § 56.21, notice of all execution sales must be advertised for four successive weeks, and on or before the date of the first publication, the sheriff **must send** a copy of the notice of sale **by certified mail** to the judgment debtor (or counsel) at the last known address—even in cases of default judgment.

3. Further, the levying creditor must also facilitate compliance with § 56.27(4) affidavit requirements regarding liens and ensure proper notice to the debtor and other interested parties. Harris, who is a lawyer and whose name, address and contact information is (ans always has been) contemporaneously published in the

[2] The Law Offices of J.B. Harris, P.A. has been inactive since 2023. J.B. Harris, P.A. was administratively dissolved in 2011. The Law Offices of Jonathan B. Harris, P.A. operates under the active fictious name of J.B. Harris, P.A.

Florida Bar's publicly available, online directory, wherever Harris may be residing, never received such notice—no demand for turnover of stock, and no communication from Kalb, the sheriff, or any court regarding a scheduled sale.

4. This omission not only contravenes Florida statutory mandates but further evidences bad faith, abuse of process, and Kalb's willingness to sabotage a debtor to gain an advantage. The court must not give credence to this type of conduct; depriving Harris of the right to notice and an opportunity to be heard is a blatant violation of Harris's rights to due process. Indeed, if Kalb or his representatives submitted an affidavit to the sheriff attesting to compliance with these notice requirements, they did so under false pretenses—further underscoring the improper purpose of invoking bankruptcy to circumvent state-law protections.

5. Kalb falsely claims to be the sole shareholder of each Debtor entity and asserts that all three entities are 100% owned by DB Mortgage LLC. Under the circumstances, this assertion is demonstrably false. On November 22, 2022, a Texas trial court entered a final judgment against Harris following a declaratory action filed by one Phillip Howard ("Howard") and Virage ("Virage") **(Exhibit "B")**. Ironically, the judgment is for Virage's attorney's fees, not for damages.

6. On November 26, 2024, the Texas First District Court of Appeals overturned the Texas trial court's final judgment against Harris (Exhibit "C"), which Kalb and Virage Capital Management, PC seek to collect through this bankruptcy.[3]

[3] Virage is a litigation lender of ill-repute known for comingling suspect foreign funds through its numerous Cayman Island accounts with onshore domestic investments to lend to dubious contingent fee law firms like Howard's, Tom Girardi's https://bit.ly/4gBQVLG; https://bit.ly/4aZVhZl; and Miami's own John "The

Virage then moved for *en banc* reconsideration, which the court denied **(Exhibit "D")**. Virage subsequently appealed to the Texas Supreme Court through a petition for writ of certiorari. The issues before the Texas Supreme Court are identical to those before this court.

7. It is no accident that the bankruptcy filings occurred at the precise moment when the two critical legal proceedings were pending: (1) an Assignment for the Benefit of Creditors ("ABC") action pending in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 2021-CA-009064; and (2) the Texas Supreme Court appeal.

8. The bankruptcy filings evidence all the hallmarks of bad faith under controlling Eleventh Circuit precedent: (i) strategic timing designed to frustrate creditors' legitimate efforts; (ii) minimal unsecured creditors; (iii) single-purpose entities with no ongoing business operations; and (iv) forum shopping to a distant jurisdiction with no meaningful connection to the Debtors' operations.

9. Under the totality of the circumstances, the bankruptcy petitions serve no legitimate reorganization purpose and were filed by Kalb solely to delay and obstruct the resolution of disputes long litigated in the appropriate forums. Accordingly, the court must dismiss this action under 11 U.S.C. § 1112(b) for cause, including lack of good faith, and under 11 U.S.C. § 305(a) because the interests of creditors and the Debtors would be better served outside of bankruptcy.

---

Billionaire Lawyer" Ruiz, to name a few. https://bit.ly/4eqZZBO; https://bit.ly/4oGKFEm; https://bit.ly/4uX0TuT; https://bit.ly/4eZi6ik. Harris notes this background solely to provide context for the parties' relationships and negotiations, not as an independent basis for ruling on this motion.

## II. STATEMENT OF FACTS

### A. Background of the Underlying Litigation

10. Kalb is a strawman for Virage, which is headquartered in Houston, Texas, with offices in Miami. Since 2019, Virage sued Harris in jurisdictions in both Texas and Florida. This bankruptcy is merely another attempt by Virage to collect a Texas final judgment which the Texas appellate court overturned.

11. Virage's purpose in filing this bankruptcy is two-fold: (i) it is an attempt to collect the overturned Texas final judgment against Harris, which Virage had domesticated in Miami-Dade County Circuit Court, *Virage Capital Management LP, et al. v. J.B. Harris, P.A., et al.*, Case No. 2022-23001-CA-01 (11th Jud. Cir.); and (ii) it is an ill-advised challenge to a multi-million dollar confidential global settlement made by and between approximately 100 *Engle* and *Broin* progeny tobacco clients and cigarette defendants, R.J. Reynolds Tobacco Co. and Philip Morris USA, Inc. Virage has been trying in vain to usurp Harris's legal fees since 2021. Neither Harris nor any of the Harris Debtors have ever signed a promissory note, security agreement, or guarantee in evidence of any indebtedness owed by them (or anyone else) to Virage.

12. On January 28, 2025, the Florida Third District Court of Appeal issued an opinion and mandate, affirming the trial court's order granting execution of the domesticated judgment against Harris **(Exhibit "E")**. However, that opinion was rendered moot by the Texas First District Court of Appeal, which overturned the underlying Texas trial court's final judgment on November 26, 2024. Kalb and Virage sat on the Third DCA's mandate for **512 days** before filing these bad-faith

suggestions of bankruptcy. The length of that interval alone speaks volumes about the timing of Kalb's/Virage's filing.

### B. The Assignment for the Benefit of Creditors Proceeding

13. In 2021, Virage commenced an Assignment for the Benefit of Creditors action in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Business Court, styled *In re: Howard & Associates, Attorneys at Law, P.A., Assignor, to Larry S. Hyman, Assignee; Larry S. Hyman, as Assignee v. Virage Capital Management LP, et al.,* Case No. 2021-CA-009064. The ABC proceeding involves Howard & Associates, Attorneys at Law, P.A., as assignor, with Larry S. Hyman, C.P.A., P.A., serving as the court-appointed assignee.

14. Howard is a disbarred lawyer serving a 14-year sentence in federal prison for operating a Ponzi scheme from his law offices in Tallahassee. Howard employed the Ponzi scheme to defraud nearly 200 retired NFL players (Howard's clients)—who were suffering from the ravages of Chronic Traumatic Encephalopathy (CTE)—of their compensation from the billion dollar NFL concussion compensation fund **(Exhibit "F")**.

15. Virage had loaned Howard $30 million to operate his law firm, which he never repaid. Since 2019, Virage has aggressively pursued repayment from Harris—suing Harris in Texas, Miami, and in the ABC—based on a flawed theory that Harris owes money to his disbarred and convicted former co-counsel Howard—proceeds to which Virage claims entitlement to via an assignment of Howard's interest in a joint fee-sharing agreement which no court has affirmed.

16. The Debtors are listed as defendants in the ABC adversary proceeding alongside Virage Capital Management LP, Virage, LLC, Virage SPV 1 LLC, Jonathan Beryl Harris, Law Offices of J.B. Harris, P.A., J.B. Harris, P.A., and Elias, LLC.[4] The ABC proceeding represents a comprehensive state court liquidation process designed to marshal and distribute the assignor's assets for the benefit of creditors under Florida law. So far, the only assets the Assignee has found is Harris's and Elias's fee claims.

17. Under Florida Statutes § 727.104(b), an assignee in an ABC has broad powers to execute the assignment and administer the estate, but an assignee does not possess authority to file for bankruptcy on behalf of the assignor corporation unless explicitly and plainly authorized to do so by the assignor in the ABC agreement. On its Motion for Summary Judgment, the ABC court dismissed Virage's baseless claims against Elias LLC **(Exhibit "G")**, which Virage has now appealed to the Second DCA. Harris is in the process of preparing his Motion for Summary Judgment, which the court no doubt will dismiss on similar grounds.

**C. The Texas Litigation and Appellate Proceedings**

18. The Texas litigation involving the Debtors concerns a Confidential Settlement and Release Agreement ("CSA") executed in April 2018 among Jonathan

---

[4] Harris and Elias are co-counsel on 65 *Engle* progeny tobacco cases, which Harris originated, involving individual smokers who became sick and died from their addiction to nicotine contained in cigarettes manufactured by R.J. Reynolds Tobacco Co. and Philip Morris USA, Inc. After two years of negotiations, Harris and Elias settled Harris's entire portfolio of cases and **all the clients have been paid through a third-party fiduciary overseen by the judge presiding over the ABC court.**

Beryl Harris, his law firms, and Virage Capital Management, LP. The CSA addressed the transfer of funds, fee splits on tobacco-related cases, and other obligations of the parties.

19. In June 2022, a Texas trial court entered a final declaratory judgment specifying that Virage is "entitled to a valid lien on 40% of the gross fees across all the cases" and ordered Harris to pay Virage $759,568.50 in attorney's fees, costs, and interest. Harris appealed the judgment. On November 26, 2024, the Texas Court of Appeals for the First District reversed the trial court's final judgment and remanded the case for additional proceedings.

20. The appellate court concluded that the CSA is ambiguous and that the trial court erred in interpreting it as a matter of law as an unambiguous contract. The court held that a factfinder must determine the parties' intent after receiving partial extraneous evidence on the matter, even though the parties all agreed that the interpretation of the contract was a question of law confined to the four corners of the CSA. Virage moved for *en banc* reconsideration, which the court denied. Virage then appealed the denial of *en banc* reconsideration to the Texas Supreme Court on its petition for writ of certiorari **(Exhibit "H")**. The issues pending before the Texas Supreme Court are identical to those elevated here and to those that the parties have litigated since 2021 in the ABC action.

### D. Kalb's Fraudulent Public Records Filings and Bad Faith Bankruptcy Petitions

21. On Friday, June 12, 2026, again without notice to Harris pursuant to Florida Statutes §§ 56.21 and § 56.27(4), or a record filing with the circuit court

presiding over execution of the final judgment, Kalb unilaterally filed an Amended Annual Report with the Florida Secretary of State for The Law Offices of Jonathan B. Harris, P.A., claiming that he was the new owner **(Exhibit "I")**. On June 14, 2026, the Secretary of State, Department of Regulatory Affairs, Division of Corporations notified Harris that a possible fraudulent filing had occurred. Having no prior knowledge of Kalb or his intent—who Harris obviously would have known about had he received proper notice— Harris verified that the filing was a suspicious attempt to hijack his law firm by an unknown agent **(Exhibit "J")**. Thereafter, the Division of Corporations voided the Amended Annual Report **(Exhibit "K")**.

22. On June 18, 2026, the Debtors filed three simultaneous Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the Southern District of Florida, Miami Division. Kalb filed the suggestions in his capacity as Manager of DB Mortgage LLC, sole shareholder of each Debtor entity. The bankruptcy filings occurred at a critical juncture in both the Hillsborough County ABC proceedings and the Texas Supreme Court appeal. According to the bankruptcy petitions, each Debtor has estimated assets of $0–$50,000 and liabilities of $1,000,001–$10 million. The Debtors list their principal place of business as "c/o DB Mortgage LLC, Attn: Stuart Kalb, 19 W. Flagler St., Miami, FL 33130".

23. On June 19, 2026, David L. Rosendorf of Kozyak Tropin & Throckmorton, LLP, as proposed counsel for the Debtors, filed suggestions of bankruptcy in both the Hillsborough County ABC proceeding and in the related Miami-Dade County case styled *Virage Capital Management LP and Virage SPV 1 LLC v. Jonathan Beryl Harris, J.B. Harris P.A. and the law offices of J.B. Harris P.A.,*

Case No. 2022-CA-01. Both suggestions of bankruptcy assert that the automatic stay under 11 U.S.C. § 362 is in effect and stays "the commencement or continuation of a judicial, administrative or other action or proceedings against the Debtors". Rosendorf simultaneously filed a motion for joint administration of the three cases under the lead case J.B. Harris, P.A., Case No. 26-18018-PDR.

**E. The Debtors' Creditor Structure**

24. According to Official Form 204 filed with the bankruptcy petitions, the Debtors list only five creditors holding the 20 largest unsecured claims. Of these five creditors, four are listed as holding unliquidated and disputed claims with values of $0.00: Elias, LLC; Howard & Associates, Attorneys at Law PA c/o Larry S. Hyman, Assignee; and Parafinczuk Wolf PA c/o Richard M. Elias, Esq. Only two creditors are listed with quantified claims: Titan Asset Purchasing LLC, holding a contingent, disputed claim of $2,000,000.00, and Virage Capital Management, LP, holding a contingent, disputed claim of $960,768.50. Both claims are designated as contingent and disputed. The creditor matrix attached to the petition lists approximately five creditors, three of whom are attorneys or law firms, and parties involved in the ongoing litigation. The petitions indicate that the Debtors are not engaged in ongoing business operations that would justify Chapter 11 reorganization.

## III. LEGAL STANDARD

25. A bankruptcy court possesses broad authority to dismiss a Chapter 11 case "for cause" pursuant to 11 U.S.C. § 1112(b). The statute provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case

under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause".

26. Within the Eleventh Circuit, "a debtor's lack of 'good faith' may constitute cause for dismissal of a [Chapter 11] petition." *Bal Harbour Club v. Ava Dev. (In re Bal Harbour Club)*, 316 F.3d 1192, 1194 (11th Cir. 2003). The court may consider "any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *In re Phx. Piccadilly, Ltd.*, 849 F.2d 1393, 1394–95 (11th Cir. 1988). Good faith is determined through a totality-of-the-circumstances inquiry requiring reasoned factual findings. *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1267 (11th Cir. 2013).

27. The Eleventh Circuit established a framework for evaluating bad faith in *In re Phoenix Piccadilly, Ltd.*, identifying several circumstantial factors courts may consider: (i) whether the debtor has only one asset; (ii) whether the debtor has few unsecured creditors whose claims are small relative to secured creditors; (iii) the composition of the debtor's workforce; (iv) whether the debtor is the subject of foreclosure or similar state-court actions; (v) the appropriateness of the bankruptcy forum versus another forum; and (vi) whether the timing of the filing evidences intent to delay or frustrate creditors' legitimate efforts to enforce their rights. *In re Phx. Piccadilly, Ltd.*, 849 F.2d at 1394–95; *State St. Houses, Inc. v. N.Y. State Urban Dev. Corp. (In re State St. Houses, Inc.)*, 356 F.3d 1345, 1353 (11th Cir. 2004). These factors

are not exhaustive and must not be rigidly applied; rather, they serve as guidelines for evaluating whether the petition was filed in bad faith.

28. A bankruptcy court may dismiss a Chapter 11 petition for bad faith even before requiring the debtor to file a reorganization plan. *In re Nat. Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987). This authority exists because a petition tainted by bad faith cannot satisfy the good-faith requirement of 11 U.S.C. § 1129(a)(3), which forbids confirmation of any reorganization plan not proposed in good faith. Congress did not intend to delay creditor rights by requiring creditors to await a plan filing when the petition itself is filed in bad faith. In addition to dismissal under § 1112(b), bankruptcy courts possess authority under 11 U.S.C. § 305(a) to dismiss a case or suspend all proceedings "if the interests of creditors and the debtor would be better served by such dismissal or suspension". *Id.* Section 305 provides an independent basis for abstention in cases involving two-party disputes where adequate relief can be obtained in a non-bankruptcy forum. The decision to abstain under § 305 is committed to the bankruptcy court's discretion and is subject to review for abuse of discretion on appeal. *In re Goerg*, 930 F.2d 1563, 1566 (11th Cir. 1991).

29. The burden of proving bad faith rests on the party seeking dismissal. *Wortley v. Chrispus Venture Capital, LLC (In re Glob. Energies, LLC)*, 763 F.4th 1341, 1348 (11th Cir. 2014). However, once the movant presents evidence establishing the *Phoenix Piccadilly* factors or other indicia of bad faith, the burden shifts to the debtor to demonstrate that the petition was filed in good faith for a legitimate reorganization purpose. *State St. Houses, Inc.*, 356 F.3d at 1353.

## IV. ARGUMENT

30. The Debtors' Chapter 11 petitions were filed in bad faith and constitute an abuse of the judicial process. Under the totality of the circumstances and the *Phoenix Piccadilly* factors, the bankruptcy filings serve no legitimate reorganization purpose and were filed solely to delay and obstruct the resolution of disputes already being litigated in two appropriate forums—as Virage has done repeatedly in multiple forums since 2019: the Hillsborough County ABC proceeding and the Texas Supreme Court appeal. Dismissal is warranted under both 11 U.S.C. § 1112(b) for cause, including lack of good faith, and under 11 U.S.C. § 305(a) because the interests of creditors and the Debtors would be better served by dismissal.

### A. The Debtors' Bankruptcy Filings Evidence Bad Faith Under the *Phoenix Piccadilly* Factors

#### 1. The Debtors Are Single-Purpose Entities with Minimal Assets and No Ongoing Business Operations

31. The first *Phoenix Piccadilly* factor examines whether the debtor has only one asset. *In re Phx. Piccadilly, Ltd.*, 849 F.2d at 1394; *State St. Houses, Inc.*, 356 F.3d at 1353. In this case, although the Harris entities are professional service corporations that serve no purpose other than to hold disputed claims and serve as vehicles for litigation, in fact the only asset the Harris entities own is their right to attorney's fees from the global settlement with the tobacco companies. Each Debtor has estimated assets between $0 and $50,000 and estimated liabilities between $1,000,001 and $10 million. The Debtors list their principal place of business as "c/o DB Mortgage LLC, Attn: Stuart Kalb, 19 W. Flagler St., Miami, FL 33130," proving that the Debtors do not maintain independent offices or operations.

32. This structure mirrors the single-asset debtors condemned in *Phoenix Piccadilly* and *Natural Land Corp*. In *In re Nat. Land Corp.*, 825 F.2d 296 (11th Cir. 1987), the Eleventh Circuit affirmed dismissal where the debtor "acquired foreclosed land on the day of foreclosure, had no business activity, assets, or employees, and filed bankruptcy to frustrate the creditor's collection efforts." *Id.* at 298. Similarly, in *State Street Houses*, the court affirmed dismissal where the "debtor owned only Kennedy Plaza, had minimal non-insider unsecured creditors ($3M) compared to secured claims ($14.4M), had no employees, faced imminent foreclosure by the mortgagees, and filed the petition on July 16, 2002—the exact day the foreclosure cure period expired." *State St. Houses, Inc.*, 356 F.3d at 1350–51. Like the debtors in those cases, the Harris Debtors are shell entities with no ongoing business operations, a single receivable asset, and no employees performing meaningful work. The entities exist solely as litigation vehicles for collecting and distributing a global settlement with the tobacco defendants in the *Engle* cases, not as functioning businesses capable of reorganization.

### 2. The Debtors Have Few Unsecured Creditors with Small Claims Relative to the Disputed Claims

33. The second Phoenix Piccadilly factor examines whether the debtor has few unsecured creditors whose claims are small relative to secured creditors. *In re Phx. Piccadilly, Ltd.*, 849 F.2d at 1394; *State St. Houses, Inc.*, 356 F.3d at 1353. Here, the Debtors list only five creditors holding the 20 largest unsecured claims, four of whom are listed with unliquidated, disputed claims valued at $0.00. Only two creditors—Virage Capital Management, LP ($960,768.50) and Titan Asset

Purchasing LLC ($2,000,000.00)—are listed with quantified claims, and both are designated as contingent and disputed.

34. The creditor matrix reveals that three of the five listed creditors are attorneys, law firms, and parties to the ongoing litigation, not trade creditors or ordinary course of business creditors. This creditor structure indicates that the bankruptcy is not a genuine multi-creditor reorganization but rather a two-party (or limited party) dispute more appropriately resolved in state court or on appeal. In *Phoenix Piccadilly*, **the court found bad faith** where "the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors." *In re Phx. Piccadilly, Ltd.*, 849 F.2d at 1394.

35. Similarly, in *State Street Houses*, the court noted that "mortgagees held $14.4M in secured claims; non-insider unsecured claims totaled only $3M." *State St. Houses, Inc.*, 356 F.3d at 1351. The instant case presents an even more compelling picture of a limited-creditor dispute. The overwhelming majority of claims arise from the same underlying litigation, and Kalb has failed to demonstrate any significant body of ordinary-course creditors who would benefit from a reorganization.

### 3. The Debtors Have No Meaningful Workforce or Ongoing Operations

36. The third *Phoenix Piccadilly* factor examines the composition of the debtor's workforce. *In re Phx. Piccadilly, Ltd.*, 849 F.2d at 1394; *State St. Houses, Inc.*, 356 F.3d at 1353. Kalb's petitions provide no indication that the entities employ attorneys, support staff, or any employees engaged in revenue-generating activities. In State Street Houses, the court emphasized that the debtor "had no employees and

conducted no ongoing business activities." *State St. Houses, Inc.*, 356 F.3d at 1351. The absence of a workforce indicates that the entity is not a functioning business capable of reorganization but rather a shell used to manipulate the bankruptcy process.

#### 4. The Debtors Are Subject to Pending State Court Actions in Appropriate Forums

37. The fourth *Phoenix Piccadilly* factor examines whether the debtor is the subject of foreclosure or similar state-court actions. *In re Phx. Piccadilly, Ltd.*, 849 F.2d at 1395; *State St. Houses, Inc.*, 356 F.3d at 1353. Here, the Debtors are defendants in an Assignment for the Benefit of Creditors action pending in Hillsborough County, Florida, Business Court, Case No. 2021-CA-009064. The ABC proceeding is a comprehensive state court liquidation process designed to marshal and distribute the assignor's assets for the benefit of creditors under Florida law.

38. Under Florida law, an ABC serves functions analogous to bankruptcy but within the state court system. In *Ulrich v. Welt (In re Nica Holdings, Inc.)*, 810 F.3d 1280 (11th Cir. 2015), the Eleventh Circuit recognized the distinct role of Florida ABCs and held that an ABC assignee cannot unilaterally file for Chapter 7 bankruptcy on behalf of the assignor corporation unless explicitly and plainly authorized to do so by the assignor in the ABC agreement.

39. The existence of the ABC proceeding demonstrates that the state court already possesses jurisdiction over the Debtors and the underlying disputes, and that the ABC process—five years in the making—provides an adequate forum for resolving creditor claims. The bankruptcy filing serves only to disrupt the ABC

proceeding, not to provide creditors with a superior remedy. Additionally, the Texas Supreme Court appeal represents ongoing appellate litigation in the appropriate forum to resolve the validity and enforceability of the judgment underlying the creditors' claims. **The presence of these two pending state court proceedings—one in Florida and one in Texas—demonstrates that the Debtors are using bankruptcy as a forum-shopping device to escape unfavorable litigation outcomes, not as a legitimate reorganization tool.**

### 5. The Bankruptcy Forum Is Inappropriate and the Disputes Are Better Resolved in the Pending State Court Actions

40. The fifth *Phoenix Piccadilly* factor examines the appropriateness of the bankruptcy forum versus another forum. *In re Phx. Piccadilly, Ltd.*, 849 F.2d at 1395; *State St. Houses, Inc.*, 356 F.3d at 1353. This factor is particularly probative here. The underlying disputes involve litigation pending in Hillsborough County, Florida (the ABC proceeding) and before the Texas Supreme Court (the appeal from the overturned judgment). Both forums possess full jurisdiction over the parties and the claims, and both proceedings were well advanced when the Debtors filed for bankruptcy.

41. The Debtors' bankruptcy petitions list their principal place of business as Miami-Dade County but provide no indication that the entities conduct any business activities in Miami or maintain any meaningful connection to the Southern District of Florida. Under 28 U.S.C. § 1408, a bankruptcy case may be commenced in the district court for the district "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person

or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement". If the Debtors' principal place of business and principal assets were in Hillsborough County (where the ABC proceeding is pending) or in Texas (where the underlying litigation originated), the Southern District of Florida **may be** an improper venue.

42. However, even if this venue is technically proper, the bankruptcy forum is inappropriate because the disputes are better suited for resolution in the pending state court actions. In *Phoenix Piccadilly*, the court emphasized that if "the dispute underlying the bankruptcy is essentially a two-party contract or foreclosure dispute that could be adequately resolved in state court, the bankruptcy forum may be inappropriate, supporting dismissal." *In re Phx. Piccadilly, Ltd.*, 849 F.2d at 1395; *State St. Houses, Inc.*, 356 F.3d at 1353.

43. Similarly, in *In re AXL Industries, Inc.*, 127 B.R. 482 (S.D. Fla. 1991), the court dismissed an involuntary bankruptcy petition under § 305(a), finding that "this was a two-party dispute, Axl's only significant asset was its lawsuit against The Limited valued over $1 million, Remex filed the petition to control that litigation, and Remex had adequate state court remedies for debt collection and fraudulent transfer claims". The instant case presents an even stronger basis for dismissal. The ABC proceedings in Hillsborough County provides a comprehensive state court liquidation process with a court-appointed assignee tasked with marshaling and distributing assets for the benefit of creditors. The Texas Supreme Court appeal provides an appellate forum for resolving the validity of the judgment underlying the creditors'

claims. Both forums are fully capable of resolving the disputes, and neither requires the intervention of a federal bankruptcy court.

**6. The Timing of the Bankruptcy Filings Evidences Intent to Delay and Frustrate Creditors' Legitimate Efforts**

44. The sixth *Phoenix Piccadilly* factor—the timing of the filing—is the most probative evidence of bad faith. The Debtors filed three simultaneous Chapter 11 petitions on June 18, 2026, at a critical juncture in both the Hillsborough County ABC proceeding and the Texas Supreme Court appeal. In State Street Houses, the court found bad faith where the debtor "filed Chapter 11 petition July 16, 2002, two days before cure deadline" for foreclosure. *State St. Houses, Inc.*, 356 F.3d at 1350.

45. The court reasoned that "filing on cure deadline expiration demonstrated intent to delay foreclosure proceedings." *Id.* at 1353. Similarly, in Natural Land Corp., the Eleventh Circuit affirmed dismissal where "the debtor acquired the subject property on the day of foreclosure and soon thereafter filed a Chapter 11 petition." *In re Nat. Land Corp.*, 825 F.2d at 298. The instant case presents timing that is equally probative of bad faith. The bankruptcy filings occurred while the ABC proceeding was pending and while the Texas Supreme Court was considering an appeal from the overturned judgment. The simultaneous filing of three petitions and the immediate filing of suggestions of bankruptcy in both the Hillsborough County and Miami-Dade County state court cases demonstrate a coordinated strategy to invoke the automatic stay and halt all pending litigation.

46. The Debtors' counsel explicitly asserted in the suggestions of bankruptcy that "upon the filing of the petitions, an automatic stay is in effect which

among other things stays (i) the commencement or continuation of a judicial, administrative or other action or proceedings against the Debtors that was, or could have been, commenced before the filing of the Petitions". This language makes clear that the purpose of the bankruptcy filing was to invoke the automatic stay to halt the pending state court proceedings, not to facilitate a genuine reorganization. The timing and coordination of these filings leave no doubt that the Debtors filed for bankruptcy to frustrate creditors' legitimate efforts to resolve the underlying disputes in the appropriate forums.

### 7. The Debtors Cannot Demonstrate a Legitimate Reorganization Purpose

47. Even if the *Phoenix Piccadilly* factors were not dispositive, the Debtors cannot demonstrate any legitimate reorganization purpose that would justify Chapter 11 relief. A petition filed in bad faith cannot be cured by the prospect of a successful reorganization. "The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith. The taint of a petition filed in bad faith extends to any subsequent reorganization proposal." *In re Phx. Piccadilly, Ltd.*, 849 F.2d at 1395. The Debtors are not operating businesses with employees, revenue, or ongoing operations that could be reorganized. Again, the entities are nothing more than shell corporations used solely as litigation vehicles.

48. Moreover, the Debtors have not filed any reorganization plan or disclosure statement, and there is no indication that a confirmable plan could be proposed. The court need not await a plan filing to dismiss the petitions for bad faith. In *Natural Land Corp.*, the court held that "a bankruptcy court may dismiss a

Chapter 11 petition for lack of good faith before requiring the debtor to file a reorganization plan." *In re Nat. Land Corp.*, 825 F.2d at 298. The court reasoned that Congress did not intend to delay creditor rights by requiring creditors to await a plan filing when the petition itself is filed in bad faith.

**8. Abstention Under Section 305 Is Warranted Because the Interests of Creditors and the Debtors Are Better Served Outside Bankruptcy**

49. Independent of the bad faith dismissal analysis under § 1112(b), dismissal is warranted under 11 U.S.C. § 305(a), which authorizes the court to dismiss a case or suspend all proceedings "if the interests of creditors and the debtor would be better served by such dismissal or suspension". Section 305 provides an independent basis for abstention in cases involving two-party disputes where adequate relief can be obtained in a non-bankruptcy forum.

50. The Eleventh Circuit has recognized that § 305 dismissals are appropriate in two-party disputes where the debtor and principal creditor are engaged in litigation that can be resolved more efficiently outside bankruptcy. In *In re AXL Industries, Inc.,* 127 B.R. 482 (S.D. Fla. 1991), the court affirmed dismissal under § 305(a) because "this was a two-party dispute, Axl's only significant asset was its lawsuit against The Limited valued over $1 million, Remex filed the petition to control that litigation, and Remex had adequate state court remedies for debt collection and fraudulent transfer claims".

51. The court emphasized that "Remex had adequate state remedies for debt collection and fraudulent transfers," *id.*, and that the bankruptcy forum offered no advantage over the available state court remedies. Here, the interests of creditors

and the Debtors are better served by resolving the underlying disputes in the pending Hillsborough County ABC proceeding and the Texas Supreme Court appeal. The ABC proceeding provides a comprehensive state court liquidation process with a court-appointed assignee tasked with marshaling and distributing assets for the benefit of creditors under Florida law.

52. The assignee in the ABC proceeding, Larry S. Hyman, C.P.A., P.A., is already performing the core functions that a Chapter 11 trustee or debtor-in-possession would perform: collecting assets, resolving disputes, and distributing proceeds to creditors. Florida's ABC statutory framework provides creditors with adequate remedies without the need for federal bankruptcy intervention. The ABC proceeding is specifically designed to address the liquidation and distribution of assets in cases where a debtor cannot pay its creditors, and Florida courts are fully capable of adjudicating creditor disputes, fraudulent transfer claims, and other issues that might arise in the administration of the estate.

53. Additionally, the Texas Supreme Court appeal provides an appropriate appellate forum for resolving the validity and enforceability of the judgment underlying the creditors' claims. The bankruptcy forum offers no advantage to creditors in this case. The Debtors have minimal assets, no ongoing business operations, and no prospect of proposing a confirmable reorganization plan. The bankruptcy case would merely duplicate the work already being performed by the ABC assignee in Hillsborough County and would delay the resolution of the underlying disputes pending before the Texas Supreme Court.

54. Section 305 dismissals are particularly appropriate where, as here, the bankruptcy case involves a limited number of creditors, and the underlying disputes are already being litigated in appropriate forums. The court's decision to abstain under § 305 is committed to the bankruptcy court's discretion and is subject to review for abuse of discretion on appeal. Under the totality of the circumstances, the interests of creditors and the Debtors are better served by dismissing the bankruptcy cases and allowing the pending state court proceedings to continue without interference from the automatic stay.

**9. The Debtors' Filing Violates the Court's Inherent Authority to Prevent Abuse of Process**

55. Even if the Court were to find that the *Phoenix Piccadilly* factors do not compel dismissal under § 1112(b) and that abstention under § 305(a) is not warranted, the Court possesses inherent authority to sanction conduct that abuses the judicial process and to dismiss petitions filed for improper purposes. Federal Rule of Bankruptcy Procedure 9011 authorizes sanctions for filings made for an improper purpose, including "an order directing payment of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation".

56. In addition, bankruptcy courts possess inherent authority to sanction conduct that abuses the judicial process. *Wortley*, 763 F.4th at 1354. The key to unlocking the court's inherent sanctioning authority is a finding of subjective bad faith, meaning intentional rather than merely reckless conduct. *Id.* Here, the Debtors coordinated filing of three simultaneous bankruptcy petitions at a critical juncture in two pending state court proceedings—followed immediately by suggestions of

bankruptcy designed to invoke the automatic stay and halt all pending litigation—evidences subjective bad faith.

57. The Debtors' counsel explicitly asserted that the purpose of the bankruptcy filings was to stay "the commencement or continuation of a judicial, administrative or other action or proceedings against the Debtors". *Id.* This constitutes an improper use of the bankruptcy process. In *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989), the court identified factors showing an "intent to abuse the judicial process and the purposes of the reorganization provisions," including "whether the petition was filed strictly to circumvent pending litigation." The court emphasized that petitions filed solely to avoid litigation consequences demonstrate bad faith even if the debtor has colorable claims. *Id.*

58. Similarly, in *In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986), the court held that "the protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law." The court concluded that debtors who "sought to abuse the process through a technicality to serve their own malevolent and selfish aims" should not be permitted to use the bankruptcy process. *Id.*

59. The instant case presents egregious abuse of process. The Debtors are shell entities with no ongoing business operations, minimal assets, and no prospect of reorganization. Virage (using Kalb) filed the petitions for the sole purpose of invoking the automatic stay to halt pending litigation in two appropriate forums. This

conduct undermines the integrity of the bankruptcy system and warrants dismissal under the Court's inherent authority to prevent abuse of process.

## V. CONCLUSION

60. The Debtors' Chapter 11 petitions were filed in bad faith and constitute an abuse of the judicial process. Under the totality of the circumstances and the *Phoenix Piccadilly* factors, the bankruptcy filings serve no legitimate reorganization purpose and were filed solely to delay and obstruct the resolution of disputes already being litigated in the Hillsborough County ABC proceeding and the Texas Supreme Court appeal. The Debtors are single-purpose shell entities with minimal assets, no ongoing business operations, no employees, and no prospect of proposing a confirmable reorganization plan.

61. The creditor structure consists almost entirely of parties to the underlying litigation, with minimal non-insider unsecured creditors. The bankruptcy forum is inappropriate because the disputes are better suited for resolution in the pending state court actions, which provide adequate remedies for creditors. Most significantly, the timing of the bankruptcy filings—at a critical juncture in both the ABC proceeding and the Texas Supreme Court appeal—evidences a coordinated strategy to invoke the automatic stay and halt all pending litigation. This conduct demonstrates unmistakable intent to frustrate creditors' legitimate efforts to enforce their rights in appropriate forums.

62. Dismissal is warranted under 11 U.S.C. § 1112(b) for cause, including lack of good faith. Dismissal is also warranted under 11 U.S.C. § 305(a) because the interests of creditors and the Debtors are better served by resolving the underlying

disputes in the pending Hillsborough County ABC proceeding and the Texas Supreme Court appeal. Additionally, the Court possesses inherent authority to dismiss the petitions to prevent abuse of the judicial process.

**WHEREFORE**, Harris respectfully requests that this Court:

1. Dismiss the Chapter 11 bankruptcy petitions filed by J.B. Harris, P.A., The Law Offices of J.B. Harris, P.A., and The Law Offices of Jonathan B. Harris, P.A., Case Nos. 26-18018-PDR (Consolidated), 26-18020-PDR, and 26-18021-CLC, pursuant to 11 U.S.C. § 1112(b) and § 305(a);
2. Terminate the automatic stay imposed by 11 U.S.C. § 362 to allow the pending Hillsborough County ABC proceeding and the Texas Supreme Court appeal to proceed without interference;
3. Issue an Order to Show Cause as to why Virage through Kalb filed what is otherwise a frivolous bankruptcy proceeding.
4. Award Harris's reasonable attorneys' fees and costs incurred in bringing this motion pursuant to Federal Rule of Bankruptcy Procedure 9011 and the Court's inherent authority; and
5. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ J.B. Harris, Esq.*
(FBN 495034)
10 Aragon Ave., Ste. 1403
Coral Gables, FL 33134
(786) 303-8333
jbharrisesq@gmail.com

## CERTIFICATE OF MEET AND CONFER

Pursuant to Local Rule 9073-1(D) of the United States Bankruptcy Court for the Southern District of Florida, I hereby certify that on June 23, 2026, I personally conferred by telephone with opposing counsel opposing counsel, David L. Rosendorf, Esq. regarding the relief requested in Harris's Urgent Motion to Dismiss Suggestion of Bankruptcy for Bad Faith Filing and Abuse of Process and for Relief from the Automatic Stay. During this conferral, I explained the grounds for the motion, including the bad faith filing, lack of authorization for the Suggestion of Bankruptcy, violations of Florida notice requirements, and the pending state court proceedings that render bankruptcy unnecessary. I requested that the Debtors withdraw the Suggestion of Bankruptcy and consent to relief from the automatic stay to allow the Hillsborough County ABC proceeding and Texas Supreme Court appeal to proceed. Opposing counsel objected to the motion and declined to consent to the requested relief or to withdraw the Suggestion of Bankruptcy. No agreement was reached, necessitating the filing of this Motion.

Respectfully submitted,

*/s/ J.B. Harris, Esq.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 23, 2026, a true and correct copy of the foregoing was served electronically via the Court's CM/ECF system upon all counsel of record.

*/s/ J.B. Harris, Esq.*