UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re                                               Case No. 20- 14372-MAM

ROBERT J. MOCKOVIAK and                             Chapter 11
SANDRA H. MOCKOVIAK

_____Debtors._____    /

**NOTICE OF FILING REDLINE VERSION OF PROPOSED
AMENDED COMBINED DISCLOSURE STATEMENT AND
CHAPTER 11 PLAN OF REORGANIZATION FOR DEBTORS ROBERT J.
MOCKOVIAK AND SANDRA H. MOCKOVIAK**

Debtors, Robert J. Mockoviak and Sandra H. Mockoviak (together, the
"**Mockoviaks**"), give notice of filing the attached redline version of their proposed
*Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization for Debtors
Robert J and Sandra H. Mockoviak.*

Dated: October 27, 2025              Respectfully submitted,

                                     COLE SCHOTZ P.C.
                                     *Counsel for Debtors, Robert J. Mockoviak and
                                     Sandra H. Mockoviak*
                                     2121 SW 3rd Avenue, Suite 200
                                     Miami, Florida 33129
                                     Phone: (305) 374-4848
                                     Primary Email: LSalazar@coleschotz.com
                                     Primary Email: JCeide@coleschotz.com
                                     Primary Email: LLorenzo@coleschotz.com
                                     Secondary Email: ALee-Sin@coleschotz.com

                                     By:_____*/s/ Luis Salazar*_____
                                              Luis Salazar
                                              Florida Bar No. 147788
                                              Jose Ceide
                                              Florida Bar No. 015937
                                              Lorenzo Lorenzo, Jr.
                                              Florida Bar No. 88718

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all parties identified on the Service List attached to the original hereof, either via transmission of Notices of Electronic Filing generated by CM/ECF.

_/s/  Luis Salazar_
Luis Salazar

SERVICE LIST

**Electronic Mail Notice:**

- **Stefan Beuge**   flsd.bankruptcy@phelanhallinan.com, mhartz@shumaker.com
- **Carmen Contreras-Martinez**   carmen.contreras-martinez@saul.com, aida.mclaughlin@saul.com;litigationdocketing@saul.com
- **Joyce Adriana Delgado**   jadelgado@venable.com
- **Frederic J Dispigna**   fdispigna@mlg-defaultlaw.com, mlgfl-bk@mlg-defaultlaw.com;ecf@mlg-defaultlaw.com;MLGBK@ecf.courtdrive.com
- **Heidi A Feinman**   Heidi.A.Feinman@usdoj.gov
- **Barry P Gruher**   bpgruher@venable.com, ipmalcolm@venable.com;jbisenberg@venable.com;cascavone@venable.com;bsilva@venable.com;imalcolm@ecf.courtdrive.com
- **Andrew W Houchins**   ahouchins@rushmarshall.com
- **April Howard**   aharriott@raslg.com
- **Eric D Jacobs**   edjacobs@venable.com, btraina@venable.com,btraina@ecf.courtdrive.com,tpetrie@venable.com;imalcolm@venable.com;ipmalcolm@venable.com;imalcolm@ecf.courtdrive.com
- **Glenn D Moses**   gmoses@venable.com, cascavone@venable.com;ipmalcolm@venable.com;jnunez@venable.com;imalcolm@ecf.courtdrive.com
- **Wanda D Murray**   wanda.murray@usdoj.gov, WMurray@ecf.courtdrive.com
- **Martin P Ochs**   martin.p.ochs@usdoj.gov
- **Office of the US Trustee**   USTPRegion21.MM.ECF@usdoj.gov
- **Hampton Peterson**   legalservices@PBCTax.com
- **Richard Piepes**   rpiepes@raslg.com
- **Ivan J Reich**   ireich@nasonyeager.com, llavender@nasonyeager.com;raldama@nasonyeager.com
- **Traci H Rollins**   trollins@gunster.com, crossodivita@gunster.com
- **Luis Salazar**   lsalazar@coleschotz.com, luis-salazar-4791@ecf.pacerpro.com;lsalazar@coleschotz.com;JCeide@coleschotz.com;LLorenzo@coleschotz.com;Alee-sin@coleschotz.com; DFernandez@coleschotz.com;EVazquez@coleschotz.com
- **Lindsey Savastano**   Lindsey.Savastano@gmlaw.com, michelle.torres@gmlaw.com
- **Scott W Spradley**   scott.spradley@flaglerbeachlaw.com, suzy@flaglerbeachlaw.com
- **Wendy J Wasserman**   wwasserman@mlg-defaultlaw.com, mlgfl-bk@mlg-defaultlaw.com;ecf@mlg-defaultlaw.com;MLGBK@ecf.courtdrive.com
- **Scott R. Weiss**   sweiss@raslg.com, sweiss@raslg.com

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re                                          Case No. 20-14372-MAM

ROBERT J. MOCKOVIAK and                         Chapter 11
SANDRA H. MOCKOVIAK

_____          /
            Debtors.

**AMENDED COMBINED DISCLOSURE STATEMENT AND
CHAPTER 11 PLAN OF REORGANIZATION FOR
DEBTORS, ROBERT J. AND SANDRA H. MOCKOVIAK**

Dated:  October ~~15~~27, 2025          Respectfully submitted,

                                        COLE SCHOTZ P.C.
                                        *Counsel for Debtors, Robert J. Mockoviak and Sandra H.
                                        Mockoviak*
                                        2121 SW 3rd Avenue, Suite 200
                                        Miami, Florida 33129
                                        Phone:  (305) 374-4848
                                        Primary Email:  LSalazar@coleschotz.com
                                        Primary Email:  JCeide@coleschotz.com
                                        Primary Email:  LLorenzo@coleschotz.com
                                        Secondary Email:  ALee-Sin@coleschotz.com

                                        By:      */s/ Luis Salazar*
                                        _____
                                                 Luis Salazar
                                                 Florida Bar No. 147788
                                                 Jose Ceide
                                                 Florida Bar No. 015937
                                                 Lorenzo Lorenzo, Jr.
                                                 Florida Bar No. 88718

Debtor, Robert J. Mockoviak and Sandra H. Mockoviak (together, the "**Debtors**" or the "**Mockoviaks**"), submit this Amended Combined Disclosure Statement and Plan of Reorganization (the "**Combined Plan and Disclosure Statement**") pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., including sections 1121, 1123, and 1125, for consideration by the Court and creditors in this Chapter 11 case.

This Combined Plan of Reorganization and Disclosure Statement is presented to inform you of the proposed Plan for restructuring the debt of the Mockoviaks and to seek your vote to accept the Plan.  You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan.

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY NO LATER THAN 5:00 P.M. ON _____, 2025. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

**Clerk of the United States Bankruptcy Court**
**For the Southern District of Florida**
**1515 North Flagler Drive, Room 801**
**West Palm Beach, FL 33401**

A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____, **2025** AT ____:____ AND WILL TAKE PLACE AT THE UNITED STATES BANKRUPTCY COURT LOCATED AT 1515 N. FLAGLER DRIVE, ROOM 801, COURTROOM A, WEST PALM BEACH, FL 33401.

**ARTICLE I**
*Purpose of the Combined Disclosure Statement and Plan*

**1.01    Combined Document for Efficiency.**

The purpose of this Combined Disclosure Statement and Plan is twofold:

1. **Disclosure Statement Component:** To provide creditors and parties-in-interest with "adequate information" (as that term is defined in Section 1125(a) of the Bankruptcy Code) regarding the Debtors' background, the history of this Chapter 11 case, the nature and extent of the Debtors' assets and liabilities, and the events that have occurred since the Petition Date.

2. **Plan of Reorganization Component:** To set forth the Debtors' proposal for the treatment and payment of allowed claims and the mechanism for concluding this Chapter 11 case.  The Plan classifies claims, describes how each class will be treated, and specifies the means of implementing the Plan.

This Combined Disclosure Statement and Plan has been prepared and filed as a single document for efficiency and cost-effectiveness.  The Debtors are seeking authorization from the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**")

to use this combined document to solicit acceptances of the Plan in accordance with Section 1125 of the Bankruptcy Code.

**1.02    Request for Confirmation.**

The Debtors respectfully submit that, if approved, this Plan will satisfy all requirements of the Bankruptcy Code for confirmation and represents the best available option for creditors.  The Debtors believe the Plan provides a fair and equitable resolution of claims, ensures payment of administrative and priority obligations in full, and provides a meaningful recovery for general unsecured creditors.  Accordingly, the Debtors request that the Bankruptcy Court confirm the Plan and encourage all creditors entitled to vote to carefully review this Combined Disclosure Statement and Plan and vote to accept the Plan.

**1.03    Overview of the Plan.**

In summary, the Plan provides for the following:

- **Administrative Expenses** – Payment in full in cash on the Effective Date, unless otherwise agreed.

- **Secured Claim of Bank of New York Mellon (Class 1)** – Impaired; the past-due COVID-related arrearage of $183,734.33 will be added to the end of the mortgage term. Debtors will continue monthly payments of $9,048.25 until fully satisfied.

- **Secured Creditor Deficiency Claims (Class 2)** – Impaired; Class 2 will be paid $0.

- **General Unsecured Claims (Class 3)** – Impaired; holders of Allowed Class 3 Claims will receive 5% of the Allowed Claim amount in a lump sum, funded by the Debtors voluntarily using a portion of the proceeds from the sale of exempt tenancy by the entirety property (the Farm Property) and cash on hand.

The Plan is funded from the net proceeds of the Court-approved sale of the Farm Property and cash on hand.  Payments to Class 3 shall be made within 30 days of the Effective Date of the Plan.

**1.04    Voting Instructions.**

Creditors whose claims are classified as impaired under the Plan are entitled to vote to accept or reject the Plan.  Ballots, together with voting instructions, will be distributed to all such creditors.  To be counted, ballots must be properly completed, signed, and returned in accordance with the instructions provided, and must be received by the deadline specified in the accompanying notice of hearing on confirmation.  Only those creditors who hold allowed claims in an impaired class are entitled to vote.

Creditors are strongly encouraged to review the entire Combined Disclosure Statement and Plan before voting.  Questions regarding the voting process may be directed to the Debtors' counsel.

**1.05    Summary of Classification and Treatment of Claims.**

The following table provides a summary of how each category of claims and interests will be treated under the Plan.  This summary is qualified in its entirety by the detailed provisions set forth in later Articles of this Combined Disclosure Statement and Plan.

| Class / Category | Description | Impairment | Treatment / Distribution |
|---|---|---|---|
| **Administrative Expenses** | Allowed administrative expense claims under §503(b) | Unimpaired (not classified) | Paid in full in cash on the Effective Date (or as otherwise agreed). |
| **Priority Claims** | Priority tax claims and other §507 claims | Unimpaired (not classified) | *None – no such claims exist.* |
| **Class 1** | Bank of New York Mellon – First Mortgage (Homestead Property) | Impaired | Past-due COVID arrearage of $183,734.33 added to end of mortgage term; ongoing monthly payment of $9,048.25 continues until fully paid |
| **Class 2** | Secured Creditor Deficiency Claims - Ferrari | Impaired | Paid $0 |
| **Class 3** | General Unsecured Claims | Impaired | 5% of Allowed Claim amount paid in a lump sum within 30 days of the Effective Date |

**1.06    Recommendation.**

The Debtors believe that confirmation of the Plan will maximize value for all parties-in-interest and provide a fair, prompt, and equitable resolution of this Chapter 11 case.  The Debtors strongly recommend that all creditors entitled to vote cast their ballots in favor of the Plan.

**ARTICLE II**
*Background and Case Summary*

**2.01    History of Debtors' Chapter 11 Case.**

On April 10, 2020 (the "**Petition Date**"), Robert J. Mockoviak and Sandra H. Mockoviak filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy, Code, 11 U.S.C. §101 *et seq.* (the "**Bankruptcy Code**"), initiating this bankruptcy case in the United States Bankruptcy Court for the Southern District of Florida.

The Debtors have continued in possession of their property and management of their affairs as debtors-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this case.  The Debtors commenced this Chapter 11 proceeding to reorganize and restructure their debts in an expedited, efficient, and cost-effective manner.

**2.02**  **Assets and Real Property Holdings on Petition Date.**

As of the Petition Date, the Debtors' assets included multiple parcels of real property:

(a)  27 Grasmere Way, Princeton, Mercer County, New Jersey (the "**Princeton Property**");

(b)  8773 Sandy Crest Lane, Boynton Beach, Palm Beach County, Florida (the "**Boynton Property**");

(c)  2727 Aquetong Road, Solebury, Bucks County, Pennsylvania (the "**Farm Property**"); and

(d)  9968 Equus Circle, Boynton Beach, Florida (the "**Homestead Property**").

Several lenders and financial institutions held secured claims against these properties, including LQD Business Finance, LLC, LQD Loans Two, LLC, Bank of New York Mellon, Cenlar Bank, Key Bank, Meridian Bank, and PHH Mortgage Services, as well as real property tax claims.

**2.03**  **Sale of Assets and Approved Transactions.**

To maximize value for the estate and reduce secured debt, the Debtors conducted several Court-approved sales of real and personal property:

- On August 20, 2020, the Debtors filed a motion to sell the Boynton Property [ECF No. 151]. The sale was approved on September 10, 2020 [ECF No. 163] and closed for $464,000, transferring title to Raul A. De Jesus Negron and Esilda L. Garcia Collazo.

- On September 25, 2020, the Debtors filed a motion to sell the Princeton Property [ECF No. 174]. The sale was approved on November 3, 2020 [ECF No. 199] and closed for $1,695,000, transferring title to Stephen J. Fortunato and Helen B. Fortunato.

- On July 24, 2020, the Debtors moved to sell their 2016 Ferrari F12 TDF [ECF No. 133]. The sale was approved on August 3, 2020 [ECF No. 138], and closed with a sale price of $800,000, to James F. Dixon.

- On August 21, 2025, the Debtors filed an expedited motion to sell the Farm Property [ECF No. 615]. The sale was approved by Order dated August 28, 2025 [ECF No. 620], and closed for $4,234,005.17, to James B. Knapp and Rebecca J. Knapp.

Through these sales, the estate generated approximately $5,137,598.77 in net sale proceeds and eliminated an estimated $2,692,224.28 in secured claims.

**2.04**  **Claims Litigation and Objections.**

The Debtors engaged in a multi-year effort to review, object to, and reduce claims filed against the estate. These efforts have resulted in significant reductions to unsecured and secured liabilities:

- On November 23, 2021, the Debtors objected to Claim No. 38 of Global Merchant Cash, Inc. [ECF No. 342].  The objection was sustained on January 5, 2024 [ECF No. 353], disallowing the full claim of $590,765.00.

- On February 16, 2023, the Debtors objected to Claim No. 62 of TransPerfect Translations International, Inc. [ECF No. 409].  The objection was sustained on May 23, 2023 [ECF No. 420], disallowing the full claim of $45,200.89.

- In total, the Debtors reduced general unsecured claims by at least $635,965.89, not including a $6,063,992.37 reduction in claims held by LQD and its affiliates.

**2.05    Settlement with Ferrari Financial Services.**

On July 2, 2020, after negotiations with Ferrari Financial Services, Inc. ("**FFS**"), the parties filed a *Stipulation and Agreed Order* [ECF No. 108] resolving Ferrari's secured claim and granting limited relief from the automatic stay.  This resolved the dispute without a contested evidentiary hearing.

Pursuant to the settlement, the Debtors were authorized to use their best efforts to sell the Ferraris to third-party purchasers at the highest possible price.  The Debtors identified a buyer for the 2016 Ferrari F12 TDF at a purchase price of $800,000.  The Court entered the *Order Approving the Sale of the Ferrari F12 Free and Clear of Liens* [ECF No. 138] on August 3, 2020.  Subsequently, on December 10, 2020, FFS filed an amended Proof of Claim (POC #8-1) in the amount of $211,056.01, representing the remaining balance of their claim.

The amended Proofs of Claim (POC #7-1 and POC #8-1) represent the remaining deficiency claims, which are now classified as Class 2 under this Plan and will be treated as $0 payment.

**2.06    Litigation and Settlement with LQD Business Finance.**

The central litigation in this Chapter 11 case involved the Debtors' dispute with LQD Business Finance, LLC, LQD Loans Two, LLC, and George Souri (collectively, the "**Adversary Defendants**"), who asserted a $7 million secured claim against virtually all estate assets.

On October 20, 2024, the Debtors filed a Motion to Approve Settlement with the Adversary Defendants [ECF No. 494] (the "**LQD Settlement**").  The settlement resolved all pending disputes and lien claims asserted by the Adversary Defendants.  On December 16, 2024, the Court entered its Order Approving Settlement [ECF No. 506].

**2.07    Tenancy-by-the-Entirety Exempt Property.**

The Debtors have asserted that all property listed on their Schedule C is exempt as tenancy-by-the-entirety under applicable Florida law.  Except for one objection filed by LQD Business Finance, all exemptions were uncontested.  The LQD objection was fully resolved pursuant to the LQD Settlement, leaving all Schedule C property fully exempt.  As a result, the estate holds no non-exempt property.

This exempt property includes, but is not limited to, personal property, vehicles, financial accounts, and other assets claimed on Schedule C. As exempt property, these assets are protected

from claims of individual creditors and are not part of the bankruptcy estate available for distribution to general unsecured creditors for liquidation in a Chapter 11 or Chapter 7 case.

Under the Plan, the Debtors intend to retain all exempt property, consistent with their claims under Schedule C. Such property will not be used to fund distributions to creditors, ensuring that these assets remain outside the reach of creditors and are preserved for the Debtors' use.

In accordance with the Absolute Priority Rule under 11 U.S.C. § 1129(b)(2)(B)(ii), if the Debtors seek confirmation by cramdown, they must distribute value equal to any non-exempt property retained. Because the Debtors hold no non-exempt property other than post-petition income already committed to the Plan, the value of non-exempt property being retained is $0, and no additional distribution is required to satisfy the Absolute Priority Rule.

Notwithstanding the foregoing, the Debtors will fund the Plan through the sale of exempt tenancy-by-the-entirety property (the Farm Property) and will voluntarily use a portion of the proceeds and cash on hand to make a lump-sum distribution to holders of Class 3 General Unsecured Claims, representing approximately 5% of their allowed claims.

**2.08    Post-Petition Income.**

Pursuant to 11 U.S.C. § 1115(a)(2), post-petition earnings of the Debtors constitute property of the estate in an individual Chapter 11 case. As of the date of the Combined Disclosure Statement and Plan, the Debtors have accumulated $_____ in post-petition net income, which represents the only non-exempt property of the estate.

The Debtors have preserved these funds in segregated accounts pending confirmation and propose to contribute the full $_____ to fund distributions under the Plan. Other than this post-petition income, no non-exempt property exists for liquidation or distribution.

**2.09    Current Status of Case and Plan Objectives.**

This Chapter 11 case was filed during the height of the COVID-19 pandemic and developed into a complex and vigorously contested proceeding. Over the course of the case, the Debtors have made substantial progress through the strategic sale of assets, resolution of claim objections, and successful litigation efforts, all of which have significantly reduced liabilities and preserved value for the benefit of creditors.

This Plan of Reorganization represents the culmination of those efforts and is designed to:

- Provide for the fair and orderly payment of allowed claims,

- Preserve the Debtors' remaining property (including the Homestead Property),

- Maximize distributions to creditors, and

- Conclude this Chapter 11 case through successful reorganization.

The Debtors' largest remaining debt obligation is the first mortgage held by Bank of New York Mellon on the property located at 9968 Equus Circle, Boynton Beach, Florida, which is jointly owned by the Debtors. As of the date of this Plan, the mortgage balance has decreased to

$776,791.68, down from $885,319.05 at the time of filing. The mortgage is fully secured and over-collateralized, and the Debtors have remained current on their payments throughout the Chapter 11 process (Class 1).

The Debtors voluntarily intend to fund the Plan using a portion of the proceeds from the Court-approved sale of exempt tenancy by the entirety property (the Farm Property) and cash on hand. These proceeds provide the liquidity necessary to:

- Pay allowed administrative and secured claims in full,

- Make a lump-sum distribution to Class 3 general unsecured creditors,

- Allow the Debtors to retain their Homestead Property, and

- Efficiently conclude this Chapter 11 case through a feasible, confirmable reorganization.

## ARTICLE III
### *Definitions and Rules of Construction*

**3.01    Rules of Construction.**

Unless otherwise specified, all section references in this Combined Disclosure Statement and Plan are to sections of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. The rules of construction set forth in §§102 and 9002 of the Bankruptcy Code and the Bankruptcy Rules shall apply to the construction of this Plan. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply.

**3.02    Definitions.**

For purposes of this Combined Disclosure Statement and Plan, the following terms shall have the meanings set forth below. Such meanings shall be equally applicable to the singular and plural forms of the defined terms, unless the context clearly requires otherwise.

**"Administrative Expense"** means any cost or expense of administration of the Debtors' Estate allowed under Section 503(b) of the Bankruptcy Code, including, without limitation, actual and necessary costs of preserving the estate, operating the Debtors' property, and professional fees approved by the Court.

**"Allowed Amount"** means, with respect to a Claim: (a) the amount scheduled by the Debtors as undisputed, liquidated, and not contingent, if no proof of claim has been timely filed; (b) if a proof of claim was timely filed, the amount stated in such proof of claim if no objection is timely filed; or (c) if an objection is filed, the amount determined by Final Order of the Court.

**"Allowed Claim"** means a Claim that is (a) scheduled by the Debtors as undisputed, liquidated, and not contingent, (b) evidenced by a timely filed proof of claim that is not disputed, or (c) allowed by Final Order of the Court. Unless expressly provided in this Plan, Allowed Claim shall not include interest accruing after the Petition Date.

8

**"Allowed Secured Claim"** means an Allowed Claim that is secured by a valid, enforceable, and perfected lien on property of the Debtors' estate, in an amount equal to the value of the collateral as determined under 11 U.S.C. § 506(a) or as otherwise agreed or determined by Final Order.

**"Article"** means one of the numbered Articles of this Plan.

**"Ballot"** means the ballot accompanying the Combined Disclosure Statement and Plan on which holders of Claims in impaired Classes entitled to vote shall indicate acceptance or rejection of the Plan.

**"Ballot Deadline"** means the last day established by Order of the Court for filing completed Ballots with the Clerk of the Bankruptcy Court.

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division, or any court having competent jurisdiction to hear appeals therefrom.

**"Business Day"** means any day other than a Saturday, Sunday, or legal holiday on which commercial banks in Palm Beach County, Florida are closed.

**"Case"** means the Debtors' jointly administered Chapter 11 bankruptcy case, Case No. 20-14372-MAM, pending before the Bankruptcy Court.

**"Cash on Hand"** means all cash held by the Debtors as of the Effective Date, including any funds maintained in bank accounts, escrow accounts, or otherwise, and including Post-Petition Income to the extent not otherwise distributed before confirmation.

**"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

**"Claim"** has the meaning set forth in 11 U.S.C. § 101(5) and includes any right to payment or equitable remedy against the Debtors as of the Petition Date, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**"Class"** means a group of Claims classified together under Article IV of the Plan pursuant to 11 U.S.C. § 1122.

**"Combined Disclosure Statement and Plan"** means this Combined Disclosure Statement and Chapter 11 Plan of Reorganization for the Debtors, as may be amended, modified, or supplemented, and all exhibits attached hereto.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order.

**"Creditor"** means the holder of an Allowed Claim.

**"Debtors"** means Robert J. Mockoviak and Sandra H. Mockoviak, the Chapter 11 debtors-in-possession in this Case.

**"Effective Date"** means the first Business Day on which all conditions to the occurrence of the Effective Date set forth in this Plan have been satisfied or waived, which shall occur no later than thirty (30) days after the Confirmation Date unless otherwise ordered by the Court.

**"Effective Date Distribution"** means the aggregate cash payment to be made by the Debtors to satisfy all Allowed Administrative Claims, U.S. Trustee Fees, and the Plan Payment to Class 3, on or before thirty (30) days after the Effective Date.

**"Estate"** means the bankruptcy estate of the Debtors created under 11 U.S.C. § 541 upon the commencement of this Case.

**"Farm Property"** means the real property located at 2727 Aquetong Road, Solebury, Bucks County, Pennsylvania, which was sold pursuant to Court Order [ECF No. 620] entered on August 28, 2025.

**"Farm Property Sale Proceeds"** means the net proceeds from the sale of the Farm Property, totaling approximately $4,234,005.17, less customary closing costs, taxes, and any other Court-approved disbursements.

**"Final Order"** means an order or judgment that has not been stayed and as to which the time for filing an appeal, motion for rehearing, or petition for certiorari has expired, or as to which any such appeal or petition has been resolved by the highest court with jurisdiction.

**"Impaired Class"** means any Class of Claims that is not "unimpaired" as that term is defined in 11 U.S.C. § 1124.

**"Petition Date"** means April 10, 2020, the date on which the Debtors filed their voluntary Chapter 11 petition.

**"Plan"** means this Combined Disclosure Statement and Chapter 11 Plan of Reorganization, including any amendments, modifications, or supplements approved by the Bankruptcy Court.

**"Plan Payment"** means the single lump-sum cash distribution to be made to holders of Allowed General Unsecured Claims in Class 3, funded from the Farm Property Sale Proceeds and cash on hand, in the total amount of approximately $~~7,441.01~~8,380.77, payable within thirty (30) days following the Effective Date.

**"Post-Petition Income"** means the earnings from services performed by the Debtors after the Petition Date, which constitute property of the estate pursuant to 11 U.S.C. § 1115(a)(2), including the accumulated post-petition net income of approximately $_____ that the Debtors shall contribute to fund distributions under the Plan.

**"Pro Rata"** means proportionately, based on the ratio of the amount of an individual Allowed Claim to the total amount of all Allowed Claims in the applicable Class.

10

**"Professional Person"** means any professional employed under 11 U.S.C. §§ 327 or 1103 and approved by the Bankruptcy Court, including attorneys, accountants, financial advisors, and other professionals.

**"Quarterly Fees"** means the fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), due until the case is closed, dismissed, or converted.

**"Remaining Assets"** means the Homestead Property and any other property retained by the Debtors as of the Effective Date, excluding any cash used for the Effective Date Distribution.

**"Reorganized Debtors"** means Robert J. Mockoviak and Sandra H. Mockoviak on and after the Effective Date.

**"Rules"** means the Federal Rules of Bankruptcy Procedure and Local Rules of the United States Bankruptcy Court for the Southern District of Florida.

**"Secured Claim"** means a Claim secured by a lien on property of the estate, to the extent of the value of such lien, as determined under 11 U.S.C. § 506(a).

**"Secured Creditor"** means the holder of an Allowed Secured Claim.

**"Solicitation Package"** means the materials approved by the Court for transmission to holders of Claims entitled to vote on the Plan, including the Combined Disclosure Statement and Plan, Ballots, and Confirmation Hearing Notice.

**"Unimpaired Class"** means a Class of Claims that is not Impaired under the Plan pursuant to 11 U.S.C. § 1124.

**"U.S. Trustee Fees"** means the fees payable pursuant to 28 U.S.C. § 1930(a)(6) and accrued interest thereon, if any, due and owing to the Office of the United States Trustee until the Case is converted, dismissed, or closed by entry of a final decree.

**Rules of Interpretation:** (i) any term used in the singular includes the plural, and vice versa; (ii) the words "herein," "hereof," and "hereto" refer to the Plan as a whole and not to any particular section, subsection, or clause; (iii) captions and headings are for convenience of reference only and shall not affect the interpretation of this Plan; and (iv) in the event of any inconsistency between this Plan and the Disclosure Statement, the terms of the Plan shall control.

### ARTICLE IV
*Summary of Plan Terms*

#### 4.01    Overview.

This Combined Disclosure Statement and Plan provides for the treatment of all allowed claims against the Debtors. The Plan is designed to:

- Maintain the Debtors' ongoing obligations to their mortgage lender, Bank of New York Mellon (Class 1), with the COVID-19-related arrearage to be added to the end of the mortgage term;

- Pay all allowed administrative expenses in full;

- Treat the Ferrari deficiency claims as its own class (Class 2) with $0 distribution; and

- Make a meaningful, lump-sum distribution to general unsecured creditors (Class 3) funded from the Debtors voluntarily using a portion of proceeds from the sale of exempt tenancy by the entirety property (the Farm Property) and cash on hand.

This approach maximizes the value of the Debtors' estate and provides creditors with a greater recovery than they would receive in a Chapter 7 liquidation.

**4.02    Summary of Classes and Treatment.**

**CLASS 1 – Bank of New York Mellon (1ˢᵗ Mortgage):**

The secured claim of Bank of New York Mellon, currently $776,791.68, decreased from $885,319.05 (POC #5) at the time of filing the petition, is impaired due to the COVID-related arrearage of $183,734.33, which will be added to the end of the mortgage term.

The claim is secured by a first mortgage on Debtors' real property, located at 9968 Equus Circle, Boynton Beach, Florida. The payment, including escrow is $9,048.25 (P&I - $7,826.83 and Escrow - $1,221.42.25). The Debtors will continue making monthly mortgage payments to Shellpoint Mortgage Servicing pursuant to the existing loan terms. Bank of New York Mellon shall retain its lien on the Homestead Property until the loan is fully paid. This class is impaired and is entitled to vote on the Plan.

**CLASS 2 – Secured Creditor Deficiency Claims:**

The deficiency claims of Ferrari Financial Services, Inc., totaling $281,914.56, will receive $0 under the Plan. This class is impaired and entitled to vote on the Plan.

**CLASS 3 - General Unsecured Claims:**

Class 3 consists of all other allowed general unsecured claims, currently totaling $~~148,840.37~~167,615.37. Class 3 creditors will receive a lump-sum distribution of 5% of their allowed claim amounts (funded entirely by the Debtors voluntarily using a portion of the net proceeds from the sale of the Farm Property and cash on hand) within thirty (30) days following the Effective Date. The distribution will represent 5% of the total allowed general unsecured claims. This class is impaired and entitled to vote on the Plan.

**4.03    Administrative Expenses (Unclassified Claims).**

Allowed administrative expenses, including professional fees approved by the Court and outstanding U.S. Trustee fees, will be paid in full on the Effective Date (or on such other terms as agreed by the claimant and Debtors or as ordered by the Court).

**4.04    Feasibility of the Plan.**

The Debtors believe the Plan is feasible within the meaning of 11 U.S.C. § 1129(a)(11). The net proceeds from the Farm Property sale, together with post-petition income from the Debtors,

are sufficient to ~~make~~fund the ~~Class 3~~ lump-sum distribution ~~and~~ to Class 3 general unsecured creditors, pay all allowed administrative expenses, ~~while the Debtors' ongoing income is sufficient to~~and maintain ongoing mortgage payments under Class 1. The Debtors' trailing 12-month income is approximately $250,000.00. This combined funding ensures that the Debtors can satisfy their regular mortgage obligations while also addressing the COVID-related arrearage, confirming that the Plan can be fully implemented without additional financing or risk of default.

**4.05    Liquidation Analysis.**

The Debtors have conducted a liquidation analysis pursuant to 11 U.S.C. § 1129(a)(7). Based on the value of the Debtors' non-exempt assets, the amount of secured claims, and estimated Chapter 7 administrative expenses, the Debtors project that general unsecured creditors would receive no distribution in a Chapter 7 liquidation.

Under the Plan, Class 3 general unsecured creditors receive 5%, providing a substantially higher recovery than would be available in liquidation and satisfying the "best interests of creditors" test.

| Liquidation Analysis | Chapter 7 | Proposed Plan |
|---|---|---|
| Net Non-Exempt Assets | $0 | $~~7,441.01~~8,380.77 |
| Secured Claims (Homestead Property) | N/A | $0 |
| Chapter 7 Admin. Costs | ($10,000.00) | $0 |
| Net Balance for General Unsecured Claims | ($10,000.00) | $~~7,441.01~~8,380.77 |
| Distribution to General Unsecured Claims | 0% | 5% |

**ARTICLE V**
*Classification and Treatment of Claims*

**5.01    Unclassified Claims.**

**a.    Allowed Administrative Claims.**

Administrative expenses are costs or expenses of administering the Chapter 11 case which are allowed under 11 U.S.C. §507(a)(2).  Administrative expenses also include the value of any goods sold to the Debtors in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, if any.  All entities seeking an award by the Court of Professional Fees and Expenses shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date pursuant to section 330 if the Code and Rule 2016 by the date that is ten (10) days after the Effective Date or such other date as may be fixed by the Court.

Each holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of such Allowed Administrative Claim, either (A) an amount equal to the unpaid amount of such Allowed Administrative Claim in cash commencing on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Administrative Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtors; or (B) such other treatment (i) as may be agreed upon in writing by the Claimholder and the Debtors, or (ii) as the Bankruptcy Court has ordered or may order. Notwithstanding the foregoing, Allowed Administrative Claims representing (a) liabilities, accounts payable, or other Claims or obligations incurred in the ordinary course of business of the Debtors consistent with past practices subsequent to the Petition Date, shall be paid or performed by the Debtors in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements or contracts relating thereto; provided, notwithstanding any contract provision, applicable law or otherwise, that entitled a holder of an Allowed Administrative Claim to post-petition interest, no holder of an Allowed Administrative Claim shall receive post-petition interest, on account of such Claim.

    **b.**    **United States Trustee Fees.**

Until the Effective Date of a confirmed plan, the Debtors shall continue to file the UST Form 11-MOR, Monthly Operating Report and shall timely pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) (the "Quarterly Fees"). Within two business days of the Effective Date, the reorganized Debtors and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred. Following the Effective Date of the confirmed plan, the reorganized Debtors and any other authorized parties who have been charged with administering the confirmed plan shall file the UST Form 11-PCR, Post-confirmation Report, every calendar quarter and shall timely pay the U.S. Trustee Quarterly Fees until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case.

The following chart lists the estimated Administrative expenses and their proposed treatment under the Plan:

| TYPE | ESTIMATED AMOUNT OWED | PROPOSED TREATMENT |
|------|------------------------|---------------------|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 | The Debtors has been paying post-petition expenses in the normal course, and does not believe that any amounts are due and owing. |
| Professional Fees, as approved by the Court | Est. $_____ | Professional fees to be paid in full on or before Effective Date of Plan. |
| Office of the U.S. Trustee Fees | Est. $250.00 | Paid in full on the Effective Date of Plan. |
| **TOTAL** | $_____ | |

**5.02**    **Classes of Secured Claims.**

Allowed Secured Claims are claims secured by property of the bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under 11 U.S.C. §506.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtors' secured prepetition claims and their proposed treatment under the Plan:

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| **CLASS 1** – Secured Claim of Bank of New York Mellon (POC #5) in the amount of $885,319.05 is impaired.<br><br>1st mortgage on real property located at:<br>9968 Equus Circle, Boynton Beach, FL 33472<br><br>Secured Claim amount:<br>$885,319.05<br><br>Existing Mortgage Terms:<br>Interest Rate: 7.5%<br>Maturity Date: August 1, 2036 | Impaired | Class 1 consists of the Allowed Secured Claim of Bank of New York Mellon in the amount of $885,319.05, secured by a first-priority mortgage on the Debtors' homestead property located at 9968 Equus Circle, Boynton Beach, Florida 33472.<br><br>Class 1 is impaired under the Plan.  The past-due COVID-related arrearage in the amount of $183,734.33 shall be deferred and added to the end of the existing loan term without interest accrual on the arrearage.<br><br>The Debtors shall maintain the existing contractual mortgage terms, including the current 7.5% interest rate and monthly principal and interest payment of $9,048.25, which shall continue post-confirmation until the secured claim is paid in full in accordance with the modified terms of this Plan.<br><br>Bank of New York Mellon shall retain its lien on the property until its Class 1 Claim has been paid in full.  All other terms and conditions of the original Note and Mortgage shall remain in full force and effect except as expressly modified herein.  Payments shall be made to Shellpoint Mortgage Servicing, or such other servicer as may be designated by Bank of New York Mellon. |

### 5.03    Secured Creditor Deficiency Claims.

Class 2 consists solely of the claims held by Ferrari Financial Services, Inc. (POC #7-1 and #8-1) in the amount of $211,056.01.  This claim is impaired under the Plan.  No distribution will be made to Ferrari Financial Services on account of this claim, and the claim will be deemed satisfied in full for $0.

**5.03    General Unsecured Claims.**

General unsecured claims are not secured by property of the estate and are not entitled to priority under 11 U.S.C. §507(a).  The following chart identifies the Plan's proposed treatment of Class 3, which contains general unsecured claims against the Debtors.

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 3 – General Unsecured Creditors | Impaired | Class 3 consists of all allowed general unsecured claims totaling approximately $~~148,840.37~~167,615.37.  Class 3 Creditors shall share pro rata in a single lump-sum distribution of approximately $~~7,441.01~~8,380.77, which will be funded by the Debtors voluntarily using a portion of the proceeds from the sale of exempt tenancy by the entirety property (the Farm Property) and cash on hand.  This lump-sum payment shall be made within thirty (30) days after the Effective Date of the Plan.  The distribution represents 5% of the total allowed general unsecured claims. |

The Debtors' scheduled and unsecured claims are set forth either in Schedule F and/or in the Claims Register.  The aggregate amount of allowed claims included in Class 3 is $~~148,840.37~~167,615.37.

The total distribution amount of approximately $~~7,441.01~~8,380.77 ensures that allowed unsecured claimants in Class 3 will receive approximately 5% of their claims.  This recovery is substantially higher than what would be available to general unsecured creditors in a hypothetical Chapter 7 liquidation, where the value of non-exempt assets would be $0 and insufficient to provide any meaningful distribution.

| Unsecured Claims (Class 3) | Claim Amount | Distribution Percentage | Payment Amount |
|---|---|---|---|
| American Express National Bank | $35,035.63 | 5% | $1,751.78 |
| American Express National Bank | $68,267.48 | 5% | $3,413.37 |
| Quantum3 Group LLC as agent for Comenity Bank | $36,602.45 | 5% | $1,830.12 |
| Quantum3 Group LLC as agent for Comenity Bank | $2,596.45 | 5% | $129.82 |
| JP Morgan Chase Bank | $6,136.19 | 5% | $306.81 |

| | | | |
|---|---|---|---|
| Verizon by American InfoSource as Agent | $202.17 | 5% | $10.11 |
| MacDonald Weiss | $18,775.00 | 5% | $938.75 |
| **TOTAL** | **$~~148,840.37~~167,615.37** | 5% | **$~~7,441.01~~8,380.77** |

## ARTICLE VI
*Distributions Under the Plan*

**6.01    Method of Distribution Under the Plan.**

(a)    Subject to Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtors to the holder of each Allowed Claim at the address of such holder as listed on the Schedules and/or Proof of Claim as of the distribution record date unless the Debtors or Reorganized Debtors has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b)    Any payment of Cash made by the Reorganized Debtors pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)    Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    Any distributions of Cash or other property pursuant to the Plan that is unclaimed for a period of 90 days after the distribution date shall constitute Unclaimed Funds and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(e)    Unless otherwise provided herein, all initial distributions and deliveries to be made on the Effective Date shall be made on the initial distribution date.  Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

**6.02    No Distribution Pending Allowance.**

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim or Allowed Equity Interest (in whole or in part).

**6.03    Disallowed Claims.**

All Claims held by Persons against whom the Debtors or Reorganized Debtors has commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such

Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estates from such party have been paid.

**6.04    Disbursing Agent.**

The Reorganized Debtors, or such Person(s) as the Reorganized Debtors may designate with approval of the Court, will act as disbursing agent under the Plan with respect to all Distributions to holders of Claims and Equity Interests, and will make all distributions required to be distributed under the applicable provisions of the Plan.

**6.05    No Recourse.**

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agents, the Debtors, the Reorganized Debtors, or any of their respective professionals, consultants, or affiliates or respective successors or assigns, or any of the Debtors' respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code. **THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS**.

**6.06    Amendments to Claims.**

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtors and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtors, the Reorganized Debtors or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

**6.07    Post-petition Interest on Claims.**

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

**6.08    Unclaimed Funds.**

Upon return of any plan distribution, Debtors shall issue letter correspondence to the last known address indicated on Debtors' schedules or applicable proof of claim.  Debtors' correspondence shall include a check for the applicable Plan Payment and provide all necessary case information to enable Creditor's determination of the applicability of Debtors' plan payment.

Any payments made pursuant to Plan that are unclaimed for a period of six (6) months shall be forfeited by the holder and will be re-deposited in the Disbursing Agent's account in accordance with 11 U.S.C. §347(b).

## ARTICLE VII
### *Plan Funding and Implementation*

The funding for all distributions under this Plan will be derived ~~entirely~~ from (i) the net proceeds of the Farm Property sale (approximately $4,234,005.17), after payment of customary closing costs, taxes, and Court-approved expenses., and (ii) post-petition income of the Debtors, which totals approximately $250,000.00 on a trailing 12-month basis. ~~These proceeds~~These combined funds are sufficient to (i~~a~~) pay all Allowed Administrative Claims in full, (ii~~b~~) make the single lump-sum Class 3 Plan Payment to general unsecured creditors, and (iii~~c~~) provide for the Debtors' continued ability to meet their ongoing obligations, including monthly payments on the Bank of New York Mellon mortgage (Class 1). The Debtors' projected income and remaining assets are adequate to ensure full implementation of this Plan ~~in full~~, satisfying the feasibility requirements of 11 U.S.C. § 1129(a)(11).

**7.01   Plan Funding.**

All payments required to be made under this Plan, including payment of Allowed Administrative Claims, U.S. Trustee Fees, and the Class 3 Plan Payment, shall be funded from the Farm Property Sale Proceeds and cash on hand.  No new financing or outside capital contribution is required for Plan performance.  The Farm Property was sold pursuant to Court Order [ECF No. 620], generating net sale proceeds of approximately $4,234,005.17.  These proceeds are sufficient to:

1.  Pay all Allowed Administrative Claims in full,

2.  Pay all required Quarterly Fees through the Effective Date, and

3.  Make the Class 3 lump-sum distribution to general unsecured creditors as provided herein.

**7.02   Timing of Distributions.**

The Debtors shall make all required payments under the Plan within thirty (30) days after the Effective Date, unless otherwise agreed in writing by the holder of the Allowed Claim or as ordered by the Court.

**7.03   Retained Property.**

Except as otherwise provided in this Plan, on the Effective Date the Debtors shall retain all Remaining Assets, including their homestead property located at 9968 Equus Circle, Boynton Beach, Florida, and any other assets not liquidated prior to the Effective Date.

**7.04   Implementation and Authority.**

The Debtors are authorized, without further order of the Court, to execute, deliver, file, or record all documents, instruments, and agreements, and to take all actions necessary or desirable to implement and consummate this Plan, including:

- Disbursing funds to Class 3 Creditors,

- Paying administrative claims and U.S. Trustee fees,

- Continuing mortgage payments to Bank of New York Mellon on the Homestead Property, and

- Filing any final post-confirmation reports required by the Office of the U.S. Trustee.

**7.05    Final Decree.**

After all Plan Payments and administrative expenses have been satisfied, the Debtors shall promptly seek entry of a Final Decree closing the Case pursuant to Bankruptcy Rule 3022.

**ARTICLE VIII**
*Feasibility Statement*

**8.01    Feasibility Under 11 U.S.C. § 1129(a)(11).**

The Debtors submit that this Plan is feasible and not likely to be followed by liquidation or further financial reorganization, except as expressly provided herein.

 This conclusion is based on the following:

1. **Sufficient Sale Proceeds and Post-Petition Income:**

   The Farm Property sale generated approximately $4,234,005.17 in net proceeds, ~~which~~ and the Debtors have post-petition income totaling approximately $250,000.00 on a trailing 12-month basis. These combined funds are more than adequate to fund all required Plan payments, including:

   o   Full payment of all Allowed Administrative Expenses,

   o   Payment of all U.S. Trustee fees through the Effective Date, and

   o   The Class 3 lump-sum distribution to general unsecured creditors.

2. **Ongoing Mortgage Obligations:**

   The Debtors ~~have remained current on their Bank of New York Mellon mortgage and~~ will continue to make monthly payments of $9,048.25 ~~from~~ on their Bank of New York Mellon mortgage (Class 1) from post-confirmation income. ~~The Debtors' monthly budget reflects sufficient disposable income to maintain this payment~~ and, if necessary, available cash from the Farm Property sale proceeds, ensuring continued compliance with the mortgage obligations without risk to the Plan.

3. **No Additional Financing Required:**

No new financing, loans, or outside contributions are needed to implement the Plan. All obligations will be satisfied with ~~existing, liquid funds on hand~~the combined cash from the Farm Property sale and post-petition earnings.

4. **Minimal Risk of Default:**

Because all Plan obligations are either satisfied on the Effective Date or funded from cash already in the Debtors' possession, the likelihood of default under the Plan is remote.

8.02   **Pro Forma Plan Funding Analysis.**

| Category | Amount |
|---|---|
| Net Farm Property Sale Proceeds | $4,234,005.17 |
| Post-Petition Income | $_____ |
| Less: Administrative Claims (estimated) | ($_____) |
| Less: U.S. Trustee Fees (through Effective Date) | ($_____) |
| Less: Class 3 Lump-Sum Distribution | ($~~7,441.01~~8,380.77) |
| **Projected Balance Remaining** | **$_____** |

Debtors have sufficient liquidity to meet post-confirmation obligations.

### ARTICLE IX
*Best Interests of Creditors Test*

Pursuant to 11 U.S.C. § 1129(a)(7), the Plan satisfies the "best interests of creditors" test. This test requires that each holder of a claim or interest in an impaired class must receive or retain under the Plan property of a value that is not less than the amount that such holder would receive or retain if the Debtors' assets were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

If this Case were converted to Chapter 7:

1. A Chapter 7 trustee would be appointed and charged with liquidating the Debtors' non-exempt assets.

21

2. The trustee would be entitled to a statutory commission of up to 3% of all distributions made, thereby reducing the funds available to creditors.

3. Additional professional fees, administrative costs, and litigation expenses would further diminish any potential recovery.

4. The liquidation process would delay distributions, increasing costs and uncertainty.

5. Based on the Debtors' liquidation analysis, the value of non-exempt assets available for unsecured creditors would be $0, resulting in no distribution to Class 3 claimants.

Under the Plan, Class 3 general unsecured creditors will receive a lump-sum distribution of approximately $~~7,441.01~~8,380.77 funded voluntarily by the Debtors from the proceeds of the exempt tenancy by the entirety property (the Farm Property) and cash on hand, representing approximately 5% of their allowed claims. This recovery is substantially greater than what they would receive in a Chapter 7 liquidation, thereby satisfying the "best interests of creditors" test.

## ARTICLE X
*Executory Contracts and Unexpired Leases*

### 10.01 Assumption or Rejection of Executory Contracts and Unexpired Leases.

The Plan provides that all executory contracts and unexpired leases to which the Debtors is a party will be assumed. To the extent that any executory contract is not assumed, any claims arising thereunder will be deemed unsecured claims pursuant to Class 3, for purposes of treatment and distribution under the Plan. The deadline for filing a proof of claim based on a claim arising from the rejection of a lease or contract will be set by the Court at the Confirmation Hearing. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**NOTICE TO PARTIES OF ALL EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO WHICH THE DEBTORS IS A PARTY: The Plan provides that all executory contracts and unexpired leases to which the Debtors is a party will be assumed. To the extent that any executory contract is not assumed and assigned, any claims arising thereunder will be deemed unsecured claims pursuant to Class 4, for purposes of treatment and distribution under the Plan.**

## ARTICLE XI
*Provisions for Execution and Implementation of the Plan*

### 11.01 General.

Upon confirmation of the Plan, and in accordance with the confirmation order, the Debtors or Reorganized Debtors, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

### 11.02 The Reorganized Debtors.

Except as otherwise provided in the Plan and the Confirmation Order, on the Effective Date, Reorganized Debtors shall be vested with all of the property of the Estate free and clear of all Claims, liens, encumbrances, charges, and other interests, including but not limited to that of holders of Claims and holders of Equity Interests. The Reorganized Debtors shall assume all of the Debtors' rights, obligations and liabilities under the Plan.

**11.03  Funding.**

The Plan will be funded from the following sources:

(a)  **Post-Petition Income Contribution.**  The Debtors will contribute $16,573.52 in post-petition net income, which constitutes the only non-exempt property of the estate pursuant to 11 U.S.C. § 1115(a)(2).  These funds have been segregated by the Debtors and will be paid into the Plan Funding Account within fourteen (14) days after the Effective Date.

(b)  **Exempt Assets.**  The Debtors intend, but are not obligated, to use a portion of the proceeds from the voluntary sale of exempt tenancy by the entirety real property (the Farm Property) to fund Plan payments.

(c)  **Cash on Hand and Future Earnings.**  To the extent necessary to complete distributions under the Plan, the Debtors will also use cash on hand and voluntary contributions from future earnings or other exempt assets.

The Debtors reserve the right to prepay any amounts due under the Plan from exempt assets or third-party contributions without penalty and to seek the entry of a final decree closing this case upon completion of Plan payments.  Upon the Effective Date, all property of the estate shall revest in the Debtors, except for property specifically dedicated to Plan funding, rejected executory contracts, and property expressly transferred under the terms of the Plan.

The funds to make the plan payments funded will come from the Debtors voluntarily using a portion of the proceeds from the sale of exempt tenancy by the entirety property (the Farm Property) and cash on hand.

To the extent that the Debtors wishes to prepay any amounts due under the Plan from exempt assets or other third-party sources, the Debtors reserves the right to do so without penalty and to seek the entry of a final decree closing this case.  The Debtors, as reorganized, will retain and will be re-vested in all property of the Estate, excepting property which is to be sold or otherwise disposed of as provided herein, executory contracts which are rejected pursuant to the Plan and property transferred to Creditors of the Debtors pursuant to the expressed terms hereof. The retained property shall be used by the Debtors in the ordinary course of Debtors' personal affairs.

**11.04  Approval of Agreements.**

Entry of the Confirmation Order shall constitute approval of the Plan Documents and all such transactions, subject to the occurrence of the Effective Date.

**11.05  No Change of Control.**

Any acceleration, vesting or similar change of control rights of any Person or Entity in an arrangement with the Debtors that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

**11.06    Administration After the Effective Date.**

After the Effective Date, the Reorganized Debtors may use, acquire, and dispose of the property, free of any restrictions of the Code and Rules.

**11.07    Term of Bankruptcy Injunction or Stays.**

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**11.08    Re-vesting of Assets.**

Except as otherwise provided in the Plan, pursuant to section 1141 of the Code, the property of the Estate of the Debtors, shall revest in the Reorganized Debtors on the Effective Date, free and clear of all Liens, Claims and interests of holders of Claims and Equity Interests, except as otherwise provided in the Plan or the Confirmation Order.

**11.09    Discharge of Debtors.**

Debtors shall receive a discharge upon completion of all payments under the Plan or upon satisfaction of §1141(d)(5)(B), the Reorganized Debtors will be discharged, pursuant to section 1141(d)(1) of the Bankruptcy Code, from all Claims and debts that arose before the Effective Date of this Plan and from any liability of any kind whether or not: (a) a proof of Claim is filed or deemed to be filed under Section 501 of the Bankruptcy Code; (b) such Claim is allowed under section 502 of the Bankruptcy Code; or (c) the holder of such Claim has accepted the Plan, **PURSUANT TO 11 U.S.C. §1141(D)(5), DEBTORS WILL NOT RECEIVE A DISCHARGE UNTIL COMPLETION OF ALL PAYMENTS UNDER THE PLAN.**

On the Effective Date, all persons who have held, hold or may hold Claims against the Debtors, will be enjoined from taking any of the following actions or affecting the Reorganized Debtors, the Debtors' Estate, the assets or properties of the Reorganized Debtors, other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Reorganized Debtors; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Reorganized Debtors or the Debtors' Estate or the assets or properties of the Reorganized Debtors or the Debtors' Estate; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Reorganized Debtors or the Debtors' Estate or any direct or indirect successor-in-interest to the Reorganized Debtors, or any assets or properties of any such transferee or successor other than as contemplated by the Plan; (iv) asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Reorganized Debtors or the Debtors' Estate or the assets or property of the Reorganized Debtors, or any direct

or indirect transferee of any assets or property of, successor-in-interest to, the Reorganized Debtors; and (v) proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan.

**11.10   Injunction Related to Discharge.**

Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against the Debtors, or Equity Interests in the Debtors, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors, on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest. Such injunctions shall extend to successors of the Debtors (including, without limitation, the Reorganized Debtors) and the respective properties and interests in property.

**11.11   Injunction Against Interference with the Plan.**

No entity may commence or continue any action or proceeding, or perform any act whatsoever to interfere with the implementation and consummation of this Plan and the payments to be made hereunder, as long as said payments are made pursuant to the terms of the Plan. The Court retains jurisdiction to impose sanctions for any such interference, including but not limited to compensatory damages, attorney's fees and costs and, if appropriate, punitive damage.

**11.12   Votes Solicited in Good Faith.**

The Debtors has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

**11.13   Payments Within 90 Days of Filing.**

All payments made within ninety (90) days prior to the Petition Date were made in the ordinary course.  Therefore, it is not in the best interests of the creditors to pursue litigation relating to the transfers.

**11.14   Notices.**

Any notice described in or required by the terms of this Plan or the Code and Rules shall be deemed to have been properly given when actually received or if mailed, five days after the day of mailing, if such shall have been sent by certified mail, return receipt requested, and if sent to:

The Reorganized Debtors addressed to:

**Robert J. Mockoviak and Sandra H. Mockoviak**
9968 Equus Circle
Boynton Beach, Florida 33472

With copies to:

**COLE SCHOTZ P.C.**
Attn: Luis Salazar, Esq.
2121 SW 3rd Avenue, Suite 200
Miami, FL 33129

**11.15   Reservation of Rights.**

The Debtors reserve the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of the initial payments under this Plan, payment of all outstanding quarterly United States Trustee Fees, and the filing of any outstanding federal income tax returns.  Such a request may be granted only upon notice and hearing, with the notice to all creditors and interested parties.  If such request is granted, then upon the satisfaction of all payments required to be paid pursuant to the Plan to Classes 1 through 4 or five (5) years from the Effective Date, whichever is longer, the Debtors shall receive a discharge. **THIS PARAGRAPH ONLY PRESERVES THE DEBTORS' RIGHT TO SEEK THE RELIEF DESCRIBED ABOVE AND DOES NOT CONCLUSIVELY GRANT SUCH RELIEF. CREDITORS' AND INTERESTED PARTIES' RIGHTS TO OBJECT TO SUCH  RELIEF SHALL SIMILARLY BE PRESERVED UNTIL SUCH TIME AS IT IS REQUESTED BY THE DEBTORS AFTER CONFIRMATION.**

**ARTICLE XII**
*Confirmation and Effectiveness of the Plan*

**12.01   Conditions Precedent to Confirmation.**

The Plan shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived pursuant to the Plan:

(i)     The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors and include, among other things, a finding of fact that the Debtors and the Reorganized Debtors, acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions; and

(ii)     All exhibits to the Plan, including those to be contained any Plan Supplement, shall be in form and substance reasonably acceptable to the Debtors and approved by the Court.

(iii)     The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(iv)     The statutory fees owing to the United States Trustee shall have been paid in full; and

(v)    All other actions, authorizations, filings, consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtors and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

## 12.02  Effect of Failure.

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtors made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the discharge of Claims pursuant to section 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (l) constitute a waiver or release of any Action by, or Claims against, the Debtors or (2) prejudice in any manner the rights of the Debtors.

## 12.03  Waiver of Conditions.

The Debtors may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan. The Debtors may waive in writing one or more of the other condition precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

## ARTICLE XIII
### *Retention of Jurisdiction*

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

A.    To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting, therefrom;

B.    To determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

C.    To hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims or Claims;

D.    To ensure that Distribution to holders of Allowed Claims are accomplished as provided in the Plan;

E.    To enter and implement such order as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

F.        To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

G.        To consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan supplement, or any order of the Court, including, without limitation, the Confirmation Order;

H.        To hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

I.        To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

J.        To recover all Assets of the Debtors and Property of the Estate, wherever located;

K.        To determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

L.        To enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

M.        To take any action and issue such order as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

N.        To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtors for all taxable periods through the Effective Date for all taxable periods of the Debtors through the liquidation and dissolution of such entity);

O.        To hear any other matter not inconsistent with the Code;

P.        To adjudicate all Claims to any lien on any property of the Debtors or proceeds thereof;

Q.        To determine the amount of any secured claim;

R.        To deem satisfied and extinguished the mortgage lien of the Creditor in Class 1 of the Plan by entry of an order of the Bankruptcy Court in recordable form to be filed in the public records of Broward County Florida and

S.        To enter a final decree closing the Case; provided however, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtors under applicable environmental laws.

T.        To retain jurisdiction over any foreclosure proceedings involving the Homestead Property to the extent of any federal questions, and the deadline for filing a removal action is

extended for 10 day more than the period of time allotted for the claim in Class 1 to complete its foreclosure as to the Homestead Property.

## ARTICLE XIV
*Miscellaneous Provisions*

### 14.01  Tax Implications of the Plan.

The tax consequences of the implementation of the Plan to a specific creditor will depend on a number of factors, including whether the Creditor's Claim constitutes a "security" for federal income tax purposes, whether a Creditor has already taken a deduction of loss with respect to its Claim and the timing of any distributions under the Plan. It is possible that certain creditors will recognize gain or income as a result of distributions under the Plan. There also may be state, local or foreign tax considerations applicable to particular holders of Claims, none of which are discussed herein. Each holder of a Claim or any other party in interest in this case is strongly urged to consult with their tax advisor regarding the federal, state and local income and other tax consequences that the implementation of this Plan may have on them.

### 14.02  Effectuating Documents and Further Transactions.

The Debtors or Reorganized Debtors, as the case may be, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 14.03  Post-Effective Date Fees and Expenses.

From and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtors, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 14.04  Amendment or Modification of Plan.

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtors shall have complied with section 1125 of the Code. The Plan may be altered, amended or modified by the Debtors at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.  Prior to the Effective Date, the Debtors, and without the approval of the Bankruptcy Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may

correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

**14.05  Severability.**

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.  The Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.06  Filing of Additional Documents.**

On or before Substantial Consummation of the Plan, the Debtors shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**14.07  No Admissions.**

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

**14.08  Inconsistency.**

In the event of any inconsistency between the Plan and the Disclosure Statement, any Exhibit to the Plan or the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

**14.09  No Interest or Attorneys' Fees.**

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after the Petition Date, and no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

**14.10  Successors and Assigns.**

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

**14.11  Savings Clause.**

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

## 14.12  Remedy of Defects.

After the Effective Date, the Reorganized Debtors may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtors.

## 14.13  Future Cooperation.

If any claimant, or its successor in interest fails and refuses to execute any document necessary to implement the terms of the Plan (including, but not limited to a release of lien or release of mortgage), such claimant shall be liable for attorney's fees and costs incurred in obtaining such documents or a substitute therefore.

**ARTICLE XV**
*Conclusion*

The foregoing provisions constitute the Combined Disclosure Statement and Plan of Reorganization of the Debtors.  Upon entry of the Confirmation Order by the Bankruptcy Court, and subject to the occurrence of the Effective Date, this Plan shall be binding upon the Debtors, the Reorganized Debtors, all Creditors, and all other parties in interest, whether or not such parties have accepted the Plan. Confirmation of the Plan shall represent a judicial determination that the Plan complies with the applicable provisions of the Bankruptcy Code and is in the best interests of all stakeholders.